IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
LYNN FRIEDMAN AND KIM         :
PHILLIP FRIEDMAN,             :
             Plaintiffs,      :    Civil Action
                              :    No. 09-2214 (JBS/JS)
     v.                       :
                              :
BANK OF AMERICA, N.A., fka    :         OPINION
FLEET BANK, N.A., fka         :
SUMMIT BANK OF NEW JERSEY     :
             Defendants.      :
                              :
```

APPEARANCES:

Gilbert W. Bates, Esq.
520 E. Myrtle Avenue
Lindenwold, NJ 08021
     Attorney for Plaintiffs Lynn Friedman and Kim Phillip
     Friedman

Diane A. Bettino, Esq.
REED SMITH LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
     -and-
Melissa A. Wojtylak, Esq.
Ryan L. DiClemente, Esq.
REED SMITH LLP
136 Main Street
Princeton Forrestal Village
Princeton, NJ 08540
     Attorneys for Defendant Bank of America, N.A., fka Fleet
     Bank, N.A., fka Summit Bank of New Jersey

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This matter is before the Court on the motion of Defendant

Bank of America, N.A., fka Fleet Bank, N.A., fka Summit Bank of

New Jersey ("Defendant" or "Bank of America") to exclude the expert report of Dennis F. Judge [Docket Item 52] and Defendant's motion for summary judgment dismissing the complaint [Docket Item 53].   Plaintiffs Lynn Friedman and Kim Phillip Friedman ("Plaintiffs") filed opposition to both motions.

The instant action arises out of the Plaintiffs' failed attempt to refinance their home and obtain cash proceeds from the equity in their property.  The Plaintiffs allege their inability to refinance was caused by the Defendant Bank of America's failure to provide the Plaintiffs with a payoff statement on their defaulted mortgage.  To support their claims, the Plaintiffs have submitted the expert report of Dennis F. Judge.

The Defendants argue that Plaintiffs' expert Dennis F. Judge should be precluded because his opinion is not supported by good grounds and he is not qualified.  Mr. Judge is offered by the Plaintiffs as an expert to testify regarding the lost profits of Plaintiff Kim Phillip Friedman's prospective business ventures which were to be funded from the cash equity obtained through the refinancing.  Mr. Judge's opinion is limited to the damages sustained by the Plaintiffs as a result of the Defendant's alleged failure to provide the Plaintiffs with a payoff statement on their defaulted mortgage loan.

The Defendant also argues that summary judgment is appropriate and the Plaintiffs' complaint should be dismissed.

The Plaintiffs allege four causes of action against the Defendant including breach of contract, tortious interference, actual fraud, and consumer fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.  In addition to the inability to show damages, the Defendant argues that the Plaintiffs have failed to satisfy essential elements of each of their claims.

For the reasons discussed herein, the court will grant the Defendant's motion for summary judgment as the Plaintiffs have failed to provide evidence to establish essential elements of their claims.  The court will dismiss the Defendant's motion to preclude Plaintiffs' expert as moot since the issue of Plaintiffs' alleged damages is not relevant to the court's decision to grant the Defendant's motion for summary judgment and dismiss the Plaintiffs' complaint.

## II.  BACKGROUND

Plaintiffs Kim Philip Friedman and Lynn Friedman, husband and wife, took out a loan in 1986 to finance the purchase of a home at 33 Woodshire Drive, Sicklerville, NJ 08081, giving a mortgage to another lender to secure the loan.  (Wojtylak Cert., Ex. C., Deposition of Kim Philip Friedman, "K. Friedman Dep." at 39:16-21.)  In 1989, Plaintiff Kim Friedman operated a window and siding business.  (K. Friedman Dep. 135:2-136:25.)  This business was not profitable, and was the primary catalyst behind Mr. Friedman declaring a personal bankruptcy in 1989.  (K. Friedman

Dep. 135:2-136:25.)

Before Mr. Friedman filed his bankruptcy action in 1989, he transferred his ownership interest in the Woodshire Drive residence to his wife. (K. Friedman Dep. 40:12-25.) Mr. Friedman testified that this transfer was made in order to help with estate planning. (K. Friedman Dep. 40:12-41:7.)

In 1999, ten years after filing his bankruptcy action, Mr. Friedman sought to refinance the mortgage on the Woodshire Drive residence despite the fact that he was no longer on the deed. Mr. Friedman applied to Summit Bank for this second mortgage in order to access the equity then accumulated in the home in order to obtain cash to pay debts and start a new business. (K. Friedman Dep. 60:8-63:10.)

Initially, the Friedmans sought to accept the 1999 loan jointly and originally they both signed documents connected with the mortgage. Subsequently, Mrs. Friedman had reservations about taking out another loan, and according to her husband, eventually told her husband she did not want to be involved in the second mortgage. Mr. Friedman then testified that he took the loan documents bearing his wife's signature and put them in storage in the attic. (K. Friedman Dep. 58:12-60:7.)

Summit Bank approved the second mortgage and on August 5, 1999, and a mortgage in favor of Summit Bank in the amount of $128,774.00 was recorded by the Camden County Clerk's Office.

4

(Def.'s Ex. B.)  The recorded mortgage bears two signatures, one for Kim Phillip Friedman and one for Lynn Friedman.  The Plaintiffs dispute the authenticity of Lynn Friedman's signature and allege the signature was forged by the Defendant.  (Sec. Am. Compl. ¶¶ 23-29.)  The Plaintiffs also allege that the date stamp on the recorded mortgage seems to have been tampered with.  (K. Friedman Dep. 54:22-55:14.)

As a result of the 1999 mortgage, the Plaintiffs received $128,000 in cash from the refinance.  (Def.'s Ex. C; K. Friedman Dep. 62:23-63:5.)  In 2001, two years after receiving the $128,000 in cash from Summit Bank, Mr. Friedman again filed for bankruptcy, this time individually without Mrs. Friedman.  (Def.'s Ex. E.)  The 2001 Chapter 13 Plan shows gambling losses and significant credit card debt.  (Def.'s Ex. E.)   Schedule D to the 2001 Chapter 13 Plan lists Summit Bank as the holder of a mortgage on the Woodshire Drive property, while Schedule H thereto lists Lynn Friedman as a co-debtor on the Summit Bank obligation.  (Def.'s Ex. E.)  Mr. Friedman was discharged from the 2001 Bankruptcy on May 18, 2002.  (Def.'s Ex. E.)

On August 9, 2002, Fleet National Bank, as successor-in-interest to Summit Bank following a merger, instituted foreclosure proceedings in Camden County against Plaintiffs Kim and Lynn Friedman, as the signers of the 1999 note and mortgage.  (Def.'s Ex. F.)  The Affidavit of Service filed in connection

with that foreclosure proceeding shows that the complaint was personally served upon Mr. Friedman at the Woodshire Drive residence, and that he accepted service on Mrs. Friedman's behalf.  (Def.'s Ex. F.)  Mr. and Mrs. Friedman did not file an Answer in the foreclosure, or otherwise take any steps to alert the court that they believed any signature had been forged on either the note or the mortgage.  (Def.'s Ex. F.)

In July 2003, Mr. and Mrs. Friedman again filed jointly for bankruptcy, thus avoiding the sale of the property in foreclosure.  (Def.'s Ex. G.)  The Friedmans listed the Fleet foreclosure as pending in their Statement of Financial Affairs in the 2003 Bankruptcy.  (Def.'s Ex. G.)  At no time during the 2003 bankruptcy proceeding did the Friedmans alert the court that they believed their signatures had been forged on the note or mortgage.

On April 1, 2004, Fleet Bank merged with Bank of America, and as such, Bank of America became the owner of the Friedmans' 1999 mortgage.  (Def.'s Ex. I.)

In August, 2004, while the joint bankruptcy action was still pending, Plaintiff Lynn Friedman severed her bankruptcy and it was filed as a separate individual bankruptcy action.  (Def.'s Ex. H.)  In Schedule D in her individual bankruptcy, Mrs. Friedman identified Fleet Bank as the holder of the first mortgage on the Woodshire Drive property.  (Def.'s Ex. H.)  Mrs.

6

Friedman reviewed the Bankruptcy Petition with her attorney before it was filed.  (Def.'s Ex. D, Deposition of Lynn Friedman, "L. Friedman Dep.," at 23:12-25:25.)

The Friedmans voluntarily dismissed their joint 2003 bankruptcy in November 2004. (K. Friedman Dep. 71:14-18.)  Mrs. Friedman's individual bankruptcy was dismissed on February 3, 2005.  (Def.'s Ex. H.)

Sometime between 2004 to 2006, the Plaintiffs attempted to refinance their mortgage in order to avoid foreclosure and start several new business ventures including a remodeling company, a romantic cruise business, and a marina.  To accomplish the refinancing, the Plaintiffs contacted several lenders, including Lendingtree.com, Hudson United Bank, Allied Mortgage and Best Interest Rate Mortgage.  (K. Friedman Dep. at 83:11-84:1.)  In February 2005, Centex Home Equity sent Mr. Friedman a letter stating that he was conditionally pre-approved based on information that Mr. Friedman had provided.  (Def.'s Ex. M.)  Mr. Friedman admitted in his deposition that he had only conditional approvals from various lenders, and no final numbers were given for these prospective loans.  (K. Friedman Dep. at 127:18-129:23.)  There is no evidence of completed loan applications for this refinancing effort in the record before the court.

In order to successfully obtain refinancing, the Plaintiffs allege that a pay off notice from Bank of America was required.

Plaintiff Kim Friedman testified that he made several phone calls
and sent multiple letters requesting a payoff statement. (K.
Friedman Dep. at 71:22-73:11.) The Plaintiffs submit three
letters allegedly sent to Bank of America to request the pay off
from 2005 to 2006. The first letter was written by K. Friedman
to Fleet Bank on September 25, 2005. (Pl.'s Suppl. Cert. of
Gilbert Bates, Ex. B.) The second letter was written by K.
Friedman on February 21, 2006 to Fleet Bank. (Pl.'s Suppl. Cert.
of Gilbert Bates, Ex. C.) The third letter was written by a loan
officer for Hudson Mortgage Bankers requesting the whereabouts of
the original note and mortgage for Kim Philip Friedman. The
Plaintiffs have produced no proof of mailing or evidence of
receipt, either a certified mail receipt or facsimile receipt as
to the first two letters. The third letter was sent via
facsimile on July 11, 2006 and it is unclear to whom the letter
was addressed. (Pl.'s Suppl. Cert. of Gilbert Bates, Ex. A.) It
is undisputed that from 2005 to 2006, Bank of America, not Fleet
Bank, was the owner of the mortgage.

Bank of America never provided the Plaintiffs with their
payoff request because Bank of America maintains that it never
received a pay off request from the Plaintiffs. Bank of America
has produced its servicing notes for the Friedman loan in
discovery and these notes show no record of the Bank receiving a
payoff request via a letter or a phone call from the Plaintiffs

or a mortgage company.  There was a reference to a payoff request received in May 2005, but investigation in connection with discovery showed this to be entered in error, and related to another customer's loan.

In order to refinance, the Friedmans also obtained appraisals of the Woodshire Drive property.  The Plaintiffs have produced receipts for appraisals supposedly done on the Woodshire Drive property on February 27, 2005, June 13, 2007 and May 20, 2008, but have only produced the June 13, 2007 appraisal, despite being ordered by the court to produce all appraisals.  (Def.'s Ex. Q.)  In his bankruptcy petition in 2003, Mr. Friedman listed the property value as $105,000 in his documents.  (Def.'s Ex. G.)  On her Schedule A bankruptcy petition filed in 2004, Mrs. Friedman listed the value of the Woodshire Drive property as $105,500.  (Def.'s Ex. H.)  The 2007 appraisal valued the Woodshire Drive property at $279,117. (Def.'s Ex. N.)  The parties dispute the value of the property in 2005 to 2006 when the Plaintiffs were attempting to refinance.

On November 4, 2004, the Friedman loan was listed as a charge off[1] by Bank of America, based on the Friedmans' failure to make payments.  On March 27, 2006, as a precursor to the institution of foreclosure proceedings, Bank of America analyzed

---

[1] A charge off account is an account that is 180 or more days delinquent.  (Def.'s Ex. J., Deposition of Victoria Tovar, 11:23-24.)

the equity available in the Friedman property and determined that
there was "negative equity" in the property, meaning that the
value of the property was less than the outstanding balance on
the loan.  (Def.'s Ex. J., Deposition of Victoria Tovar, "Tovar
Dep.," 42:3-44:7.)  Bank of America's 2006 analysis showed that
the unpaid principal balance on the 1999 Friedman loan was
$127,096, that a senior lien balance was $30,147, that the value
of the Friedmans' Property was $105,000, and that equity in the
property was therefore a negative value and the potential
recovery to the Bank after foreclosure was $50,079.  (Tovar Dep.
Ex. 16.)

On March 30, 2006, given the negative equity in the
property, Bank of America sold the Friedman loan to Nationwide
Capital, an investor that routinely bought negative equity loans
from the Bank.  (Tovar Dep. 46:22-50:4.)  As of March 30, 2006,
Bank of America no longer owned the Friedmans' loan.

When assigning the loan to Nationwide Capital, Bank of
America provided a Declaration of Lost Instrument indicating that
after a diligent search, Bank of America could not locate the
original note.  (Tovar Dep. 52:20-53:18.)  Ms. Tovar testified
that several steps were taken prior to assigning the loan to
Nationwide.  These steps included performing a LEXIS Banko search
to verify the customers' bankruptcy status, conducting an
analysis of the equity in a property to determine if foreclosure

was a feasible option for the Bank; receiving an Offer to Purchase from Nationwide; preparing a statement for Nationwide showing the total amount that the Friedmans owed to BOA at the time of the sale of the loan; and sending a letter to the Friedmans advising them that the loan had been sold. (Tovar Dep. 40:25-51:11 and Exs. 16-18, 20 to transcript.)

Nationwide instituted foreclosure proceedings against the Friedmans shortly after the loan was purchased. The Friedmans settled the foreclosure proceeding with Nationwide by agreeing to pay Nationwide $65,000 on their outstanding obligation of approximately $170,000. (K. Friedman Dep. 109:18-25; 113:9-18.)

The Plaintiffs, representing themselves pro se, filed the instant action against Defendant Bank of America in New Jersey Superior Court - Law Division. [Docket Item 1.] The Defendant then removed the case to federal court on the basis of Plaintiffs' claims alleging violations of federal law including the Unfair Debt Collection Practices Act, Unfair Credit Reporting Act and the Truth in Lending Act. [Docket Item 2.] The Plaintiffs then filed an amended complaint which did not allege violations of federal law and then filed a motion to remand. [Docket Items 6, 7 and 15.] The court denied the Plaintiffs' motion to remand as it is well settled that a subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction.

11

Dieffenback v. CIGNA, Inc., 310 F. App'x 504, 507 (3d Cir. 2009).

The Plaintiffs then obtained counsel and subsequently filed a second amended complaint alleging four causes of action against Defendant Bank of America: breach of contract, tortious interference, actual fraud and violations of the New Jersey Consumer Fraud Act.  [Docket Item 66.]

The Defendants filed the instant motions to preclude Plaintiffs' expert and for summary judgment.  The Plaintiffs oppose both motions.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P.

56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 323.

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").  Procedurally, the parties seeking and opposing summary judgment must comply with the requirements for filing a statement of material facts not in dispute and a response thereto, as set forth in L. Civ. R.

13

56.1(a).[2]

## B. Allegation of Forged Signature of Lynn Friedman

As a preliminary matter, the court will first address the Plaintiffs' allegations that Plaintiff Lynn Friedman's signature was forged on the 1999 loan document.  The Plaintiffs maintain that Mrs. Friedman did not realize her signature was forged on the 1999 mortgage until the 2006 foreclosure proceedings.  The Defendant argues that Plaintiff Lynn Friedman ratified the loan by listing the 1999 mortgage as her own personal financial obligation on the Schedule D in her 2004 bankruptcy proceeding.

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 361 (1976).  To establish

---

[2] In several of Plaintiffs' responses to the Defendant's statement of undisputed facts, the Plaintiffs failed to cite to the record in support of their denial in violation of L. Civ. R. 56.1(a).  This rule provides: "The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. Rule 56.1(a)(emphasis added).  Therefore, the court will consider any statement of fact which was not denied by the Plaintiffs with a citation to the record as undisputed for the purposes of this motion for summary judgment.  Stouch v. Twp. of Irvington, No. 03-6048, 2008 U.S. Dist. LEXIS 54055, at *5 n.1 (D.N.J. July 16, 2008)([T]his Court will deem Defendants' uncontested facts as admitted, unless disputed by Plaintiffs in their brief and supported by evidence.").

ratification, the person must be shown to have (1) an intent to
ratify, and (2) full knowledge of all material facts.  In re
Dwek, No. , 2011 WL 84365, *7 (D.N.J. March 8, 2011).
Ratification of a loan or debt "may be express or implied, and
intent may be inferred from the failure to repudiate an
unauthorized act, from inaction, or from conduct on the part of
the principal which is inconsistent with any other position than
intent to adopt the act."  Thermo, 69 N.J. at 361.  Importantly,
"a ratification, once effected, cannot later be revoked."  Id.

The court finds that Mrs. Friedman had full knowledge of all
the material facts relating to the 1999 mortgage as evidenced by
the Plaintiffs' acceptance of the benefits of the loan, the
Plaintiffs' history of making payments on the loan, and the
multiple lawsuits filed in connection with the 1999 mortgage from
2001 to 2006.  Further, the court finds that Lynn Friedman
intended to ratify the loan when she listed the 1999 mortgage as
her own individual financial obligation in her 2004 bankruptcy
proceeding.

The Plaintiffs have not denied receiving the proceeds of the
loan, that the loan was secured through the Woodshire Drive
property, that Mrs. Friedman was the sole owner of the Woodshire
Drive property or that the Plaintiffs made payments on the 1999
mortgage for a period of time.  The Plaintiffs do not deny that
the 1999 mortgage was the subject of bankruptcy actions in 2001,

2003 and 2004 and the subject of foreclosure actions in 2002 and 2006. Indeed, the 2002 foreclosure complaint, which was served on the Plaintiffs, expressly alleged that Lynn Friedman was a signor on the mortgage and attached a copy of the 1999 mortgage bearing her signature.  This is sufficient to show that Lynn Friedman had full knowledge of the material facts surrounding the 1999 mortgage.

Further, the bankruptcy filings in 2002 and 2004 show the intent of Lynn Friedman to ratify the loan.  Specifically, the bankruptcy action in 2001 listed Lynn Friedman as a co-debtor to the 1999 mortgage.  Most significantly, Plaintiff Lynn Friedman listed the 1999 loan in Schedule D in her individual bankruptcy action as one of her own individual financial obligations after reviewing the document with her attorney.

The Plaintiffs' argument wholly disregards the record in this case and Lynn Friedman's admission to signing the mortgage in her Schedule D in the 2004 bankruptcy.[3]  The Plaintiffs had ample opportunity to challenge the validity of the note and mortgage in not one but four previous court proceedings and failed to do so.  Significantly, Mrs. Friedman listed the

---

[3]  In addition, the Plaintiffs present no evidence to support their allegation that the signature was forged.  For example, the Plaintiffs have not produced an expert report or opinion from a handwriting expert opining that the signatures on the note and mortgage were in fact, forged, or that the seal shows signs of tampering.

mortgage as one of her own personal financial obligations in her own 2004 Bankruptcy proceeding and thereby ratified the debt. Their belated argument ten years later is of no moment, and as a matter of law there is no dispute that she endorsed, and later ratified, the 1999 mortgage.

Accordingly, the Plaintiffs' allegations that Lynn Friedman's signature was forged on the 1999 mortgage is barred and Mrs. Friedman, through her inaction in previous lawsuits and her affirmance of the mortgage in the 2004 bankruptcy filing is deemed to have ratified the 1999 loan.

### C.  Breach of Contract

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir.2007).

The Plaintiffs maintain that the Defendant breached the 1999 mortgage contract by failing to provide a payoff statement and failing to properly document the contract.  It is undisputed that the Defendant did not provide the Plaintiffs with a pay off statement; however, Bank of America maintains that it did not receive a pay off request from the Plaintiffs.

The Defendants argue that summary judgment is appropriate to Plaintiffs' breach of contract claim because the contract at

17

issue, the 1999 mortgage, does not provide any obligations governing pay off requests.  The court finds this argument persuasive.

After reviewing the terms and conditions of the contract, the 1999 mortgage contains no contractual obligation for the Defendant to provide a pay off statement upon Plaintiffs' request and the contract contains no contractual provisions relating to the proper way to document said mortgage.  While a duty to provide pay off statements and properly document a mortgage loan may flow from statutes or common law, these obligations clearly do not flow from the terms and conditions of the 1999 contract.

Without establishing the violation of a contractual provision, the Plaintiffs have failed to raise a material factual dispute with regard to their breach of contract claim. Therefore, summary judgment will be granted to the Defendant and this claim will be dismissed.

**D. Tortious Interference**

A party alleging tortious interference with prospective economic advantage must establish three elements: (1) a protectable right - a prospective economic or contractual relationship; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of the prospective gain; and (4) the injury caused damage. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751

18

(1989).

The Plaintiffs maintain that the Defendant, when it merged with Fleet Bank, failed to put in place a system ensuring the Friedmans received notice as to the changes in servicing the loan and to process requests for pay offs.  The Plaintiffs argue that Defendant's failure to respond to Plaintiffs' pay off request caused them to lose their chance to refinance in 2006.  The Defendant contends that the Plaintiffs have shown at most negligence on the part of the Defendant and have not produced any evidence showing the Defendant's failure to respond to the Plaintiffs' pay off request was done intentionally and with malice.

The court finds the Defendant's argument persuasive.  There is no evidence in the record that the Defendant acted intentionally or with malice in failing to provide the Plaintiffs with a pay off statement.  There is no evidence that Defendant received a written or telephonic request for a payoff statement. Indeed, even assuming the Defendant received Plaintiffs' alleged letter requests, at most this would amount to negligence on the part of the Defendant without further evidence.  The Plaintiffs have produced no evidence from which a rational jury could find that the Defendant intentionally or maliciously interfered with the Plaintiffs' attempts to refinance in 2006 by failing to provide a pay off statement.

19

Therefore, summary judgment will be granted and this claim will be dismissed.

**E. New Jersey Consumer Fraud Act**

The New Jersey Consumer Fraud Act provides a private cause of action for victims of consumer fraud who have suffered an ascertainable loss. Hoffman v. Hampshire Labs, Inc., 405 N.J. super. 105, 113 (App. Div. 2009). The New Jersey Consumer Fraud Act prohibits a person from using or employing any unconscionable commercial practice in its dealings with a consumer "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid." N.J.S.A. § 56:8-2. See also Hoffman, 405 N.J. Super. at 113.

In order to prevail on a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must satisfy three elements. The Plaintiff must demonstrate (1) unlawful conduct on the part of the Defendant; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. N.J.S.A. § 56:8-19; Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

The Plaintiffs maintain in their brief that the Defendant violated the NJCFA by selling their note and mortgage to Nationwide. Specifically, the Plaintiffs argue that the Affidavit of Lost Instrument and the Defendant's assignment of

20

the note and mortgage to Nationwide was unlawful.  The Plaintiffs maintain that the Defendant checked computer records to verify that the original note had been lost and did not check the Camden County Recorders office and therefore, the Defendant's efforts to locate the note were not diligent.  The Plaintiffs also argue that the Defendant sold and assigned the note and mortgage to Nationwide even though Mr. Friedman's personal debt under the note and mortgage had been discharged in his 2001 bankruptcy. The Defendant maintains that the Plaintiffs have failed to establish unlawful conduct and have not established that they suffered any ascertainable loss resulting from this alleged unlawful conduct.

With regard to the Affidavit of Lost Instrument, there is no evidence in the record of unlawful conduct by the Defendant. First, the Affidavit of Lost Instrument is true as the original note is lost and has not been found.  Second, there is no duty incumbent upon mortgage lenders to check a county recorder's office prior to declaring the original note lost.  Importantly, a recorder's office only maintains a copy of the recording of the note, not the original note itself.  Finally, the record supports a finding that the Defendant was diligent in attempting to locate the original note as evidenced by the deposition testimony of Ms.

Tovar.[4]  The Plaintiff has produced no evidence to the contrary, such as due diligence procedures followed by other lenders or evidence of industry practice or regulations regarding these types of searches.  Therefore, Plaintiffs' argument is insufficient to withstand summary judgment.

Next, the Plaintiffs' argument that the Defendant had no ability to assign the mortgage and note as a result of Mr. Friedman's 2001 bankruptcy discharge is without merit. Importantly, a discharge in bankruptcy on a secured debt only relieves the debtor of personal liability on the loan.  It does not extinguish the lender's security interest in the property. The United States Supreme Court has clearly held that a "creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."  Johnson v. Home State Bank, 501 U.S. 78, 82-83 (1991).  Accordingly, the Defendant still had the ability to foreclose on the mortgaged property notwithstanding Mr. Friedman's discharge in bankruptcy.  Similarly, the Defendant also had the ability to sell its interest in the mortgage to Nationwide and assign to Nationwide its right to foreclose.

Plaintiffs are grasping at straws.  The Plaintiffs have put forth no evidence showing any misrepresentations were made in the

---

[4] Ms. Tovar testified that in searching for the Friedmans' original note in order to assign the note and mortgage to Nationwide, she searched "FileNet, which is the system that we used that had the documents that we needed in order to complete the transaction."  Tovar Dep. 52:23-25.

assignment of the note and mortgage to Nationwide.  Without evidence of any misrepresentation, the Defendant lawfully was able to assign its right to foreclose on the Woodshire Drive property to Nationwide.

Therefore, without any evidence of unlawful conduct with regard to the Defendant's sale of their 1999 mortgage to Nationwide, the Plaintiffs have failed to meet their burden to establish a claim under the New Jersey Consumer Fraud Act. Summary judgment is appropriate and their claim will be dismissed.

**F. Actual Fraud**

A plaintiff must satisfy five elements to establish a claim for common-law fraud.  A plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

The Plaintiffs make similar arguments to support their fraud count that they made in support of their New Jersey Consumer Fraud Act claim and rely on the Affidavit of Lost Instrument and the assignment of the note and mortgage to Nationwide.  For the same reasons discussed in Subsection E above, these arguments are without merit.

In addition, as discussed above, there is no evidence that the Defendant acted intentionally to harm the Plaintiffs.  There is also no evidence that the Affidavit of Lost Instrument was relied upon by the Plaintiffs in any way or that the assignments contained any misrepresentations.

Summary judgment is appropriate as the Plaintiffs have failed to come forward with evidence that could reasonably satisfy the essential elements of their claim and therefore the Plaintiff's actual fraud claim will be dismissed.

### G. Defendant's motion to preclude Plaintiffs' Expert is Moot

The court has decided that summary judgment is appropriate as to all of Plaintiffs' claims and does not need to reach the issue of whether the Plaintiffs sustained cognizable damages.  As Mr. Judge's expert report is limited to the issue of Plaintiffs' damages, there is no reason for the court to consider it.

Therefore, the Defendant's motion to exclude Plaintiffs' expert report is moot.

### IV.  CONCLUSION

The court will grant the Defendant's motion for summary judgment.  The Plaintiffs have not produced evidence from which a reasonable jury could find merit in their claims for breach of contract, tortious interference, violation of the New Jersey Consumer Fraud Act or common law fraud.  As the Plaintiffs have failed to establish essential elements of their claims, summary

judgment is appropriate and the Plaintiffs' complaint will be dismissed.  Since the Court has reached its decision without regard to the issue of Plaintiffs' alleged damages, the Court did not consider Mr. Judge's expert report.  Therefore, the Defendant's motion to preclude Mr. Judge is dismissed as moot. The accompanying Order will be entered.


**March 26, 2012**                   **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge